IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| JASON WOOD, | ) | CV 10-13-H-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| MONTANA DEPARTMENT OF REVENUE, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I. Introduction

Plaintiff Jason Wood was the Bureau Chief of the Liquor Licensing Bureau, part of the Montana Department of Revenue's Liquor Control Division. On April 23, 2009, he was suspended with pay pending a final decision on the termination of his employment, which was accomplished by way of a letter dated April 30, 2009.

Wood now seeks legal redress based on five counts against his former employer, Defendant the Montana Department of Revenue (the "Department").

1

He alleges his termination violated the Americans with Disability Act (the "ADA") (Count I), the Family and Medical Leave Act (the "Leave Act") (Count II), the Montana Human Rights Act (Count III), Montana's Governmental Code of Fair Practices (Count IV), and Montana's Wrongful Discharge from Employment Act (the "Wrongful Discharge Act") (Count V).

Before the Court are two interrelated motions. In the first, the Department moves for summary judgement on Wood's claims under the ADA, the Leave Act, and the Wrongful Discharge Act. Wood concedes that judgment on his ADA claim in favor of the Department is appropriate, but otherwise contests the motion for summary judgment. In the second motion, Wood moves to strike the Department's affirmative defense that he failed to exhaust administrative remedies for appeal and review of his termination, a prerequisite to bringing a claim under the Wrongful Discharge Act. This motion is the converse of the Department's argument that it is entitled to summary judgment on that claim.

For the reasons that follow, summary judgment is granted in the Department's favor as to Wood's ADA claim but it is otherwise denied. Wood's motion to strike the Department's affirmative defense that Wood failed to exhaust administrative remedies is granted.

## II.  Summary Judgment Standard

Summary judgment is granted when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because a summary judgment terminates a case without a trial, courts should be cautious in granting them. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This is not to say, however, that summary judgment is disfavored when the standards are met. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson, 477 U.S. at 251. The Court must determine whether a fair-minded jury could return a verdict for the nonmoving party. Id. at 252. The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that demonstrate the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323.

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The nonmoving

party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  Id.

In evaluating the appropriateness of summary judgment it is first necessary to determine whether a fact is material; and if so, it is necessary to determine whether there is a genuine issue for the trier of fact, as determined by the material submitted to the Court.  The applicable substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude entry of summary judgment.  Factual disputes that are irrelevant or unnecessary to the outcome are not considered.  Id.

### III.  Analysis

**A.    ADA Claim**

The parties agree that Wood's claim that his employer–the State of Montana–violated the ADA is barred by the Eleventh Amendment.  See Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 360 (2001) (holding suit by state employee against employer for the State's failure to comply with the ADA is barred by the Eleventh Amendment).  The Department is thus entitled to summary judgment in its favor on this claim.

**B.    Wrongful Discharge Claim**

An employee must initiate and exhaust his employer's administrative

remedies before he can bring a claim under Montana's Wrongful Discharge Act. Mont. Code Ann. § 39-2-911(2). "If the employer's internal grievance procedures are not completed within 90 days from the date the employee initiates the internal procedures, the employee may file an action under this part [and] the employer's internal procedures [shall be deemed] exhausted." Id. "Failure to exhaust administrative procedures is a complete bar to pursuing a claim under [the Act]." Offerdahl v. State, Dep't of Natural Res. and Conservation, 43 P.3d 275, 278 (Mont. 2002).

    The State of Montana employs a written grievance procedure. Step I calls for the employee and supervisor to attempt an informal grievance. If that fails, step II requires the employee to file within fifteen working days of the grievable event a written formal grievance stating the law violated, when the action occurred and the remedy desired. Management then has ten working days to respond in writing. Step III then involves the department head reviewing the matter, and if the grievance involves a demotion, discharge or suspension without pay for more than ten working days, management shall order a hearing. Admin. R. Mont. 2.21.8017.

    Wood timely initiated the grievance procedure, but no step III hearing has been held. The Department takes the position that the hearing was not held due to

Wood subverting the process, and thus the Court should bar his Wrongful Discharge Act claim.  Wood counters that the State stayed the process and in the interim ninety days have passed, meaning for the purpose of this claim he exhausted his grievance.  Wood has the better argument.

The facts are not in dispute.  On April 23, 2009, Wood received a letter from his supervisor, Shauna Helfert, stating she had recommended he be terminated.  The letter also informed him that a due process meeting was scheduled to discuss her recommendation and that he was suspended with pay pending a final decision on the termination of his employment.  Due Process Letter, Apr. 23, 2009 (dkt #34-2).  The letter made no mention of Wood's right to file a grievance in accordance with the State's administrative policy.  The meeting occurred on April 27, 2009, with Helfert, Wood and Alan Peura, the Deputy Director of the Department, in attendance.

On April 29, 2009, Wood sent Peura a letter regarding "Reasonable Accommodation."  Wood Letter, Apr. 29, 2009 (dkt #34-7).  The purpose of the letter was to elaborate on Wood's answer at the due process meeting to a question Peura asked about what "a reasonable accommodation might be."  Id.  In the letter, Wood lists off various accordances that would improve his job performance, such as being allowed to work a more flexible schedule and working from home when

6

ill.  The letter concludes by Wood requesting that if his requested accommodations cannot be met he would like to be transferred to a different position.  Wood did not mention "appeal" or "grievance" in the letter.  Nor did he challenge any action taken by his employer.

The following day Helfert sent a letter that terminated Wood.  The letter told Wood he had "the right to file a grievance in accordance with the state's grievance policy."  Termination Letter, Apr. 30, 2009 (dkt #34-9).

Wood did just that.  On May 14, 2009, Wood sent a letter regarding "[g]rievance under 2.21.8010, [Montana's grievance policy]" to Dan Bucks, the Department's Director.  Wood did not receive a response within ten days of submitting his grievance as required.  Sherwood Aff., June 13, 2011 (dkt #41). Instead, Wood received an order from Norman C. Peterson, a hearing examiner for the State of Montana, setting a telephonic conference for June 9, 2009, to schedule the step III hearing process.  Hearing Order, June 5, 2009 (dkt #41-2).  At the start of the scheduling conference, Wood's counsel objected that it was inappropriate to continue with step III because step II had not been completed.  Daw Aff., June 8, 2011 (dkt #34-5).  The hearing examiner for the State of Montana stayed the step III hearing "due to [step II] not being complete."  Icenoggle e-mail, June 14, 2010 (dkt #41-3).

The Department asks the Court to find the step III hearing never occurred due to Wood subverting the process. It argues Wood's letter to Peura regarding "Reasonable Accommodation" was a formal written grievance and his termination letter was the State's written response. Under this characterization, the step III hearing could have occurred but for Wood's incorrect objection that he never received a step II response.

The argument suffers two obvious flaws. First, it is based upon the unsupportable premise that Wood's letter regarding accommodation and the Department's subsequent termination letter satisfied step II of the grievance procedure. Wood's letter addressed what accommodations would allow him to continue his employment with the Department, not why terminating him, which had not yet occurred, would be wrong. The succeeding termination letter did not acknowledge or respond to any supposed complaint made by Wood, or otherwise indicate that the termination letter doubled as the Department's written response to Wood's formal grievance. To the contrary, the termination letter informed Wood of his rights under the Department's grievance policy to contest his termination. Simply put, there is no support for the Department's contention that step II had been satisfied by Wood's letter regarding "reasonable accommodation" and the subsequent termination letter.

Regardless, even if step II was satisfied by those letters, the Department's argument that the grievance proceeding would have been completed but for Wood subverting the process is mistaken. The undisputed facts show Wood argued a step III hearing was premature because the Department had yet to respond in writing to his grievance. The hearing examiner then stayed the proceeding due to step II not being completed. Thus what was missing from completing step III was not Wood's participation, but a hearing examiner who found it appropriate to continue with the grievance process. To be clear, this is not a case where the hearing examiner tried to hold a hearing but the employee obstinately refused to participate. To the extent the Department felt the hearing examiner was wrong to stay the matter, that argument should have been taken up with him as part of the grievance process, not as a premise to preclude Wood's subsequent claim under the Wrongful Discharge Act.

The "internal grievance procedures [we]re not completed within 90 days from the date [Wood] initiate[d] the internal procedures" so the administrative process was exhausted under Mont. Code Ann. § 39-2-911(2).

C.   **Leave Act Claim**

The Department also seeks summary judgment on Wood's Leave Act claim based on the following facts. In 2007, Wood requested and received eligibility for

9

leave under the Act through November 2008 due to a cardiac event. SUF ¶ 13 (dkt #34). Human Resources contacted Wood when most of his leave was being coded as sick leave rather than leave taken under the Act. Wood informed the Department that he had "chronic illnesses" in addition to his heart condition and that he was using sick leave for his absences resulting from these other medical conditions. Id. at ¶ 14. Essentially, the Department takes the position that because it never denied Wood leave he requested under the Act and he was fired two years after he took such leave, it is entitled to summary judgment on this claim. The argument misses the mark.

The Leave Act entitles qualifying employees to "twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). The Act provides protection for these rights, in part, by making it "unlawful for any employer to interfere with, restrain, or deny the exercise or the attempt to exercise" the rights guaranteed under the Act. 29 U.S.C. § 2615(a)(2) (emphasis added). As applicable here, an employer interferes with an employee's substantive rights by using the employee's "taking of [Leave Act]

leave as a negative factor in employment actions . . . ." 29 C.F.R. § 825.220(c).[1]

To prove the Department interfered with his rights in such a manner, Wood must prove at trial

> by a preponderance of the evidence that [his] taking of [Leave Act]-protected leave constituted a negative factor in the decision to terminate him. [He] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both.

Bachelder, 259 F.3d at 1125.

There is a genuine issue of fact as to whether the Department used Wood's taking of leave as a negative factor in its decision to terminate him. Wood's termination letter refers to his attendance over the past two years as a reason for his discharge. Termination Letter (dkt #34-9) ("I have made several attempts over the last two years to help you improve your performance and attendance."). This period of absences from work includes the time in which Wood qualified for and took leave in December 2007 pursuant to the Leave Act. The factual issue must be resolved by a jury which will determine if his doing so was a factor in the Department's decision to terminate him.[2]

---

[1] Some circuits treat discharging an employee for use of the Leave Act as a claim for retaliation under § 2615(a)(2), but the Ninth Circuit treats it as a form of interference under § 2615(a)(1). See Xin Liu v. Amway Corp., 347 F.3d 1125, 1133 n.7 (9th Cir. 2003).

[2] Wood presents other genuine issues of how the Department interfered with his rights under the Leave Act. Because summary judgment is inappropriate and the Department failed to respond to the existence of these other issues, the Court need not address Wood's auxiliary

11

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment (dkt #33) is GRANTED in part and DENIED in part. The motion is granted in Defendant's favor as to Count I (Americans with Disabilities Act claim) of Wood's Amended Complaint and denied in all other aspects.

Wood's Motion to Strike Affirmative Defense (dkt #38) is GRANTED and to strike the Department's third affirmative defense (Failure to Exhaust Administrative Remedies) in its Answer to Wood's Amended Complaint is also GRANTED.

Dated this 13th day of September, 2011.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT

---

genuine issues at this time.