IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| JASON WOOD, | ) | CV 10-13-H-DWM |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| MONTANA DEPARTMENT OF REVENUE, | ) | |
| Defendant. | ) | |

Plaintiff Jason Wood has filed two motions in limine. In his first motion (dkt # 36), he asks the Court to preclude the Montana Department of Revenue from inquiring into several factual areas. In the second (dkt # 44), he asks the Court to exclude the testimony of one of the Department's expert witnesses—Dr. Lynda Brown. Wood's motions are granted in part and denied in part, subject to renewed objections at trial. Because the parties are familiar with the factual and procedural background of this case, it is restated here only as necessary to explain the order.

## I. Wood's first motion in limine

In his first motion, Wood asks the Court to exclude evidence related to: (1) his previous forgery charge and guilty plea, (2) the investigative report from the Human Rights Bureau, (3) the Human Rights Bureau's "right-to-sue letter," (4) Wood's disability pension, and (5) statements made by unidentified Department employees regarding Wood's job performance. Wood's motion is granted only as to the forgery charge and guilty plea.

Wood argues that evidence regarding his forgery charge and guilty plea is inadmissible because (1) it is irrelevant, (2) it is inadmissible under Rule 403 of the Federal Rules of Evidence, (3) it is inadmissible under the "after-acquired-evidence" doctrine, (4) it is inadmissible under Rule 609 of the Federal Rules of Evidence, and (5) it is confidential criminal justice information.

As an initial matter, the Department states that it intends to offer evidence of Wood's forgery charge and guilty plea only for purposes of damages. As a result, Rule 609—which governs evidence offered for the purpose of attacking a witness's credibility—is inapposite but does not bar admissibility of the evidence. However, evidence of Wood's forgery charge and plea is inadmissible under Rule 403. Under Rule 403:

Although relevant, evidence may be excluded if its probative value is

2

> substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Here, Wood argues that the danger of unfair prejudice outweighs the probative value of evidence pertaining to his forgery charge and guilty plea.

A trial court has "wide latitude when it balances the prejudicial effect of proffered evidence against its probative value" under Rule 403. United States v. Higuera-Llamos, 574 F.3d 1206, 1209 (9th Cir. 2009) (citations and internal quotation marks omitted). Given the prejudicial nature of a person's prior criminal history, a district court "must take great care to limit" evidence of that history and "to avoid unnecessary prejudice . . . ." United States v. Weiland, 420 F.3d 1062, 1078 (9th Cir. 2005).

Evidence regarding Wood's forgery charge and guilty plea is only marginally relevant to the issue of damages, particularly since that charge and plea were withdrawn by the state district court in accordance with Montana state statute. As recognized by the Weiland court, though, such evidence is highly prejudicial—and unfairly so in light of its marginal relevance. The motion to exclude evidence related to his forgery charge and plea is granted to the extent that it is offered to establish a diminished earning capacity or the appropriate amount

3

of damages, if any.

The balance of Wood's first motion is denied, subject to renewed objections at trial. To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." BNSF Ry. v. Quad City Testing Laboratory, Inc., 2010 WL 4337827 (D. Mont. Oct. 26, 2010) (citations and internal quotation marks omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Id. (citations and internal quotation marks omitted). Here, as to each of the remaining areas of inquiry—i.e., the investigative report, the "right-to-sue letter," the disability pension, and statements made by unidentified Department employees—the record is insufficient to determine whether the proof is admissible. Objections regarding these areas of inquiry are subject to timely objection at trial, in the context of the pending issues.

## II. Wood's second motion in limine

In his second motion in limine, Wood seeks to exclude the testimony of Dr. Lynda Brown, a purported expert on human resources matters. He argues that Dr. Brown's testimony should be excluded under Rules 702 and 403.

Rule 702 allows admission of "scientific, technical, or other specialized

knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible under Rule 702 "if it is both relevant and reliable." Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002) (footnote omitted). Wood argues that Brown's testimony is inadmissible under Rule 702 because (1) many of the opinions in Brown's expected testimony are actually unhelpful factual assertions or legal conclusions and (2) her testimony is unreliable under Daubert.

**A.    Relevance and helpfulness of Dr. Brown's testimony**

Expert testimony is relevant or helpful to the jury if it "concerns matters beyond the common knowledge of the average layperson and is not misleading." Moses v. Payne, 555 F.3d 742, 756 (9th Cir. 2009); United States v. Freeman, 498 F.3d 893, 905 (9th Cir. 2007).

As Judge Chen of the Northern District of California recently observed, "[N]umerous courts have permitted extensive testimony by human resources experts." Sitter v. Ascent Healthcare Solutions, Inc., 2011 WL 2682976, at *1 (N.D. Cal. July 8, 2011). In particular, courts commonly permit human resources experts to testify on human resources management policies and practices and whether an employer deviated from those policies and practices. See, e.g., E.E.O.C. v. Sierra Pac. Indus., 2010 WL 3941416 (E.D. Cal. Oct. 5, 2010); Nieto

v. Kapoor, 1998 WL 1991001, at *9–10 (D.N.M. Sept. 18, 1998).

Here, while Dr. Brown's expert disclosure indicates that she will offer some testimony on human resources management policies and practices, as well as whether the Department deviated from those policies and practices, many of her opinions concern matters that are within the common knowledge of the jury. For example, Dr. Brown writes:

> It is my opinion based on the documentation submitted in discovery, that as soon as she assumed supervisory responsibility for Mr. Wood in 2005, Ms. Helfert began the process of communicating regularly with Mr. Wood about his excessive absences and his work performance issues.

Wood's Opening Brief, Ex. 1 at 4–5. The jury, however, is adequately equipped to determine if Ms. Helfert "communicat[ed] regularly" with Wood. As another example, Brown writes:

> At no time during 2005–2006 did Mr. Wood, despite documented frequent discussions with Ms. Helfert about his attendance, request FMLA either verbally or in writing. His deposition testimony supports my opinion. As discussed above, prior to this time, in 2000 and 2001, human resources/payroll initiated correspondence with him to inform him of FMLA procedures. It is therefore my opinion that he understood the process, and therefore it was his responsibility to request FMLA leave.

Id. at 5. Not only is Dr. Brown ill-equipped to determine what Wood "understood the process," the jury can just as easily make that determination as Dr. Brown can.

6

Similarly, Dr. Brown writes:

> In his deposition, Mr. Wood admitted that being at work on a continuous basis was an essential function of his job . . . . It is my opinion based on the deposition testimony that Mr. Wood's frequent lateness to work and his leaving early, as well as many of his absences, were unrelated to any health condition but rather to many personal needs that he failed to schedule during requested days off or lunch hours.

Id. at 7. Again, the jury, just as easily as Dr. Brown, can make the determination of why Wood was "frequent[ly] late[ ] to work."

None of the above opinions concern "matters beyond the common knowledge of the average layperson . . . ." Moses, 555 F.3d at 756. Therefore, they and similar opinions are excluded.

Finally, while Dr. Brown may refer to applicable laws, she may not offer an opinion on legal conclusions or an opinion on ultimate issues of law. Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058–59 (9th Cir. 2008); Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004). Thus, she may testify as to whether the Department deviated from standard human resources policies and practices in its attempt to comply with the law, but she cannot testify as to whether the Department, in fact, violated the law. See id. at 1016–17; see also Nationwide Transp. Fin., 523 F.3d at 1058–59.

Dr. Brown's testimony is limited to: (1) an explanation of the relevant

human resources policies and practices and whether, in her expert opinion, the Department deviated from those policies and practices. Dr. Brown is precluded from offering opinions on matters within the common knowledge of the jury and offering legal conclusions. If Wood believes opinions are elicited beyond the scope of this Order, timely trial objection is required.

**B.	Reliability of Dr. Brown's testimony under <u>Daubert</u>**

Wood argues that Brown's testimony is unreliable under <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993). The argument is not persuasive.

Under <u>Daubert</u>, when scientists testify as experts, they must show that their "reasoning or methodology" is "scientifically valid." 509 U.S. at 592–593. But, as to non-scientific experts, the "<u>Daubert</u> factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1017 (9th Cir. 2004) (citations and internal quotation marks omitted).

Here, Brown purports to be an expert on human resources practices—a non-scientific area of expertise. Thus, the reliability of her testimony is gauged by her personal knowledge or experience, not the scientific validity of her reasoning or

methodology. Wood does not challenge Brown's personal knowledge or experience. Accordingly, Daubert does not operate to exclude Dr. Brown's testimony.

**C.      Admissibility under Rule 403**

Wood argues that Brown's testimony should be excluded under Rule 403 because it would confuse the jury and invade the province of the jury. Wood's Opening Brief, 20. Wood does not offer a distinct reason for excluding the testimony under Rule 403 as opposed to Rule 702, and he does not offer a discussion of Rule 403's applicability. Instead, he summarily asserts that Brown's testimony should be excluded under both rules for the same reason—Brown couches factual assertions as expert opinions and draws impermissible legal conclusions.

Wood's second motion is denied to the extent that it relies on Rule 403. See, BNSF Ry., 2010 WL 4337827, at *1.

### III.  Conclusion

For the reasons above, IT IS HEREBY ORDERED that Plaintiff Jason Wood's first motion in limine (dkt # 36) is GRANTED in part and DENIED in part, subject to renewed objections at trial. The Montana Department of Revenue shall not inquire into or present any evidence of Wood's forgery charge and guilty

plea for the purpose of establishing appropriate damages. As to the remainder of Wood's first motion in limine, he may renew those evidentiary objections at trial.

IT IS FURTHER ORDERED that Plaintiff Jason Wood's second motion in limine (dkt # 44) is GRANTED in part and DENIED in part, subject to renewed objections at trial. Dr. Lynda Brown's testimony shall be limited to an explanation of the relevant human resources policies and practices and whether, in her expert opinion, the Montana Department of Revenue deviated from those policies and practices. Dr. Brown shall not offer opinions on matters within the common knowledge of the jury, and she shall not offer legal conclusions as part of her testimony. The motion is denied in all other respects, subject to renewed objections at trial.

Counsel shall ensure that any witness is made aware of this ruling.

Dated this 16th day of September, 2011.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT